UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Farnam Street Financial, Inc.,            Civil No. 09-233 (MJD/FLN)

    Plaintiff and
    Third-Party Defendant,

    v.                                       **REPORT AND RECOMMENDATION**

Pump Media, Inc.,
Jay Bajaria, and Peter Tawil,

    Defendants and
    Third-Party Plaintiffs,

    v.

Wes Olsen, *et al.*,

    Third-Party Defendants

___

Donald T. Campbell, Jeffrey A. Ehrich, for Plaintiff and Third-Party Defendants.
Theresa M. Bevilacqua, Daniel J. Brown, Gregory G. Petersen, Oliver J. McKinstry, Ronald W. Rose for Defendants and Third-Party Plaintiffs.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 25, 2009 on Plaintiff's and Third-Party Defendants' Motion to Dismiss [#51]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Plaintiff's motion be **GRANTED**.

### I. FINDINGS OF FACT

#### A. Background

This action arises from a dispute between lease-financing company Farnam Street

Financial, Inc. and media company Pump Media, Inc. [1] [2] Farnam Street is a commercial leasing company that purchases equipment for businesses and then leases that equipment to those businesses. (Affidavit of Steven C. Morgan at ¶ 2.) Pump Media is in the business of providing gas stations with televisions intended to sit atop gas pumps and transmit various advertising and other messages. (Compl. ¶ 19.) On or about November 29, 2006, Farnam Street and Pump Media entered into an agreement entitled "Lease Agreement." (Counterclaim and Third-Party Complaint of Defendants Pump Media, Inc., Jay Bajaria, and Peter Tawil ¶ 23 (hereinafter "Compl.") After Pump Media missed consecutive payments under the agreement, Farnam Street initiated this action to enforce the agreement. *Id.* at 9. Pump Media responded by filing counterclaims for usury, common law fraud, unfair business practices, breach of contract, rescission, and declaratory relief. (Compl. ¶¶ 35-62.) Pump Media argues that the lease agreement between the parties was actually a loan agreement, that during contract negotiations Farnam Street fraudulently represented the transaction as a loan, that Farnam Street has refused to "properly credit" Pump Media's payments against the total amount of the "loan," and that the agreement between the parties should be deemed null and void. *Id.* Farnam Street's motion to dismiss Pump Media's related counterclaims are the subject of this Report and Recommendation. For the reasons stated below, the motion to dismiss is granted in its entirety.

### B. The Lease Agreement

Farnam Street and Pump Media entered into an agreement captioned "Lease Agreement Number PU112906" effective November 29, 2006. (Compl. Ex. B.) The five-page Lease

---

[1] Farnam Street Financial, Inc. and the Third-Party Defendants will be collectively referred to as "Farnam Street" throughout this Report and Recommendation.
[2] Pump Media, Inc. and the Third-Party Plaintiffs will be collectively referred to as "Pump

Agreement was executed on December 1, 2006 by Third-Party Defendant and Farnam Street President Steven C. Morgan. *Id.* It was executed on November 30, 2006 by Pump Media Secretary Jay Bajaria, a Defendant and Third-Party Plaintiff in this case. *Id.* Pursuant to the agreement, Farnam Street purchased equipment for use in Pump Media's business, and then leased it to Pump Media. *Id.* The header of the agreement is "LEASE AGREEMENT" in capitalized, bold letters, and the first sentence designates Farnam Street Financial as the "Lessor" and Pump Media, Inc. as the "Lessee." (Morgan Aff. Ex. A.) The first paragraph of the Lease Agreement states:

> Lessor hereby leases or grants to the Lessee the right to use and Lessee hereby rents and accepts the right to use the equipment listed by serial number and related services, and software and related services on the Lease Schedule(s) attached hereto or incorporated herein by reference from time to time (collectively, the equipment, software and services are the "Equipment"), subject to the terms and conditions hereof, as supplemented with respect to each item of Equipment by the terms and conditions set forth in the appropriate Lease Schedule. The term "Lease Agreement" shall include this Lease Agreement and the various Lease Schedule(s) identifying each item of Equipment or the appropriate Lease Schedule(s) identifying one or more particular items of Equipment.

*Id.* The Lease Agreement expressly incorporates two "Lease Schedules" listing the equipment that is subject to the lease. *Id.* The first schedule, termed "Schedule 001," was executed by Morgan on December 1, 2006 and by Pump Media President Peter Tawil on November 30, 2006. (Compl. Ex. C.) The first sentence of Schedule 001 states, "This Lease Schedule is issued pursuant to the Lease Agreement Number PU112906 dated November 29, 2006. The terms of the Lease Agreement and serial numbers contained on Certificate(s) of Acceptance are a part hereof and are incorporated by reference herein." *Id.* Halfway down the first page of Schedule 001, under the header EQUIPMENT, is a second header entitled "EQUIPMENT DESCRIPTION

---

Media" throughout this Report and Recommendation.

(including features)." *Id.* Under "Equipment Description," the schedule states, "See Attachment A." *Id.* Attachment A is the second page of Schedule 001, and provides a general description of eight types of equipment to be leased, such as "Wireless Transmitter" and "VGA Splitter." *Id.* Further underneath the "EQUIPMENT" header is a paragraph stating,

> All of the Equipment on this Lease Schedule shall be defined as a total of $300,000. This Lease Schedule No. 001 will Commence at the earlier of (i) the first of the month following the date the Lessee has satisfied its $300,000.00 commitment; or (ii) at such time Lessor elects, at its sole discretion, to close and Commence. *A revised Lease Schedule No. 001R to replace this Lease Schedule No. 001 shall be executed by both parties to reflect the actual Equipment cost accepted* and the commensurate Monthly Lease Charge, including any adjustments required under the Monthly Lease Charge Adjustment Rider. The Monthly Lease Charge will be prorated and charged as interim rent between the installation date of each item of equipment, as Lessee indicates on the Certificate(s) of Acceptance, and the Commencement Date. Interim rent due prior to the Commencement Date shall not reduce or offset Lessee's post-Commencement Monthly Lease Charge obligations hereunder.

*Id.* (emphasis added). One year later, as expressly contemplated in Schedule 001, the parties executed Schedule 001R to replace Schedule 001. (Compl. Ex. D.) Schedule 001R specifically states that it replaces Schedule 001, and further states that it is issued pursuant to the Lease Agreement. *Id.* Schedule 001R also has an equipment description designated as "Attachment A," but the equipment is listed with much more specificity and includes information about the manufacturer, the quantity, and the numerical code for the machine/model. *Id.* Schedule 001R was executed by Morgan on December 10, 2007 and by Bajaria on December 7, 2007. *Id.*

The second Lease Schedule, Schedule 002, is nearly identical to Schedule 001. (Compl. Ex. B.) Schedule 002 was executed by Morgan on December 10, 2007 and by Bajaria on December 7, 2007. *Id.* Similar to Schedule 001, Schedule 002 expressly contemplates that Schedule 002R will replace Schedule 002 to reflect the actual equipment cost accepted. *Id.*

4

Schedule 002 also states that the equipment on the lease schedule "shall be defined as a total of $300,000" and points to Attachment A for a list of generally-described equipment. *Id.* In May 2008, the parties executed Schedule 002R to replace Schedule 002. (Compl. Ex. F.) Schedule 002R's Attachment A contains a short list of specifically-described equipment with information about the manufacturer, the quantity, and the numerical code for the machine/model. *Id.*

The Lease Agreement also includes a "Location, Ownership, and Use" provision stating that Farnam Street is the sole and exclusive owner of the leased equipment, and that the only right Pump Media has to the equipment is the right to use it in the normal operation of business. (Compl. Ex. B at ¶ 9.)[3] Additionally, the agreement states that the Lease Agreement, the Lease Schedules and associated documents are to be governed by the internal laws of the State of Minnesota, and that Farnam Street and Pump Media both consent to the jurisdiction of any local, state or federal court located within Minnesota. *Id.* at ¶ 25. It further provides that venue shall be in Minnesota and that Pump Media waives local venue and any objections relating to venue in Minnesota. *Id.* Finally, the Lease Agreement also contains a merger clause that states the "Lease Agreement and associated Lease Schedule(s) constitute the entire understanding and agreement between Lessor and Lessee with respect to the lease of the Equipment superseding all prior agreements, understandings, negotiations, discussions, proposals, representations, promises, commitments and offers between the parties, whether oral or written." *Id.*

The parties entered into a prior agreement on October 19, 2006. (Compl. Ex. 1.) The

---

[3] On July 1, 2009 the Court granted Farnam Street's Motion for Return of Property, ordering Pump Media to return all equipment listed in Attachment A to Lease Schedule 001R and Attachment A to Lease Schedule 002R. (Doc. No. 68.) Farnam Street posted a replevin bond of $862,335.27 on July 9, 2009, which will be returned to Farnam Street in the event Farnam Street prevails on its claims against Pump Media. (Doc. No. 71.)

prior agreement was a "Confidential Non-Disclosure Agreement" ("CDA"). *Id.* The CDA was effective a little over one month before the Lease Agreement and states that it was intended to protect proprietary information revealed as Farnam Street investigated Pump Media's financial condition prior to entering into a financing agreement.[4] *Id.* The CDA contains a California choice of law provision, which states:

> This Agreement shall be interpreted and enforced in accordance with the laws of the State of California. This Agreement is to be read as part of any other agreement or understanding, oral or written, between the PARTIES; and this Agreement may be modified or altered only by a subsequent written agreement entered into between the parties.

*Id.* at ¶ 17.

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts. *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319,

---

[4] On July 30, 2009, Pump Media filed for bankruptcy in the United States Bankruptcy Court for the Central District of California. (Doc. No. 72 Ex. 1.) Pursuant to 11 U.S.C. § 362, the bankruptcy filing triggered an automatic stay with respect to the claims against Pump Media. 11 U.S.C. § 362(c)(2). However, the stay does not apply to Pump Media's counterclaims against Farnam Street. *See id.*

326-27 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must contain enough facts to state a claim for relief that is "plausible on its face," and a claim has facial plausibility only when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 570; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949. In sum, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Where the Court finds that the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the pleader is not entitled to relief. *Id.* (citing Fed. R. Civ. P. 8(a)(2)).

### III. LEGAL ANALYSIS

#### A. Choice of Law

The first issue is whether California state law or Minnesota state law should apply to the dispute between the parties. The court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a). When exercising diversity jurisdiction, it is well-settled that courts apply the forum state's choice of law rules to determine which state's substantive law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 495-97 (1941); *Hauenstein & Bermeister, Inc. v. Met-*

7

*Fab Industries, Inc.*, 320 N.W.2d 886, 888 (Minn. 1982). Under Minnesota law, when parties to contract agree that actions arising from that contract will be brought in particular forum, that agreement should be given effect unless it is shown by the party seeking to avoid the agreement that to do so would be unfair or unreasonable. *U. S. Fidelity and Guaranty Co. v. Louis A. Roser Co., Inc.*, 585 F.2d 932, 935 (Minn. Ct. App. 1978).

As described above, the parties have executed two agreements – the CDA and the Lease Agreement – both of which contain choice of law provisions. Pump Media first argues that California law applies to the dispute, and then argues in the alternative that the contradiction between the California choice of law provision in the CDA and the Minnesota choice of law provision in the Lease Agreement creates an ambiguity that is inappropriate to resolve on a motion to dismiss. Mem. Opp. at 8; *see also Barry v. Barry*, 78 F. 3d 375, 382 (8th Cir. 1996). The Court rejects both arguments. Under both Minnesota and California law, the plain meaning of contract language must be enforced. *Denelsbeck v. Wells Fargo & Co.*, 666 NW. 2d 339, 346-47 (Minn. 2003) (unambiguous contract language must be given its plain and ordinary meaning); *County of San Diego v. Ace Property & Cas. Ins. Co.*, 118 P.3d 607, 612 (Cal. 2005) (if contractual language is clear and explicit, it governs). The language of the Lease Agreement is clear and unambiguous. Its choice of law provision states that the agreement shall be governed by the "internal laws of the State of Minnesota," and then goes on to expressly state that the Lease Agreement and associated documents supersede all prior agreements. (Compl. Ex. B at ¶ 25.) Nevertheless, Pump Media contends that the California choice of law provision in the CDA – a *prior* agreement executed over a month before the Lease Agreement – should control. The Court rejects this interpretation as inconsistent with the plain language of the

8

Lease Agreement, and finds that the Lease Agreement contains an explicit and unambiguous choice of law provision in favor of Minnesota state law.[5] The Court further finds that enforcing the Lease Agreement's choice of law provision would not be unfair or unreasonable because the provision is explicit and was negotiated by two business entities assumed to have equal bargaining power.

Moreover, even if, as Pump Media argues, the CDA and the Lease Agreement were construed to be part of one overarching agreement, no ambiguity would exist. The CDA expressly contemplates that it may be modified by subsequent written agreement between the parties. (Compl. Ex. at ¶ 17.) The Lease Agreement, which became effective after the CDA, is a subsequent written agreement between the parties. (Compl. Ex. B.) Thus, even under Pump Media's preferred framework, the plain language of the CDA would allow the Lease Agreement to modify the CDA with a new choice of law regime. The Lease Agreement's plain language stating that it shall be governed by Minnesota law, could, therefore, be construed as modifying the CDA to create a new choice of law provision in favor of Minnesota law. In any event, the Court will apply Minnesota state law to the counterclaims discussed below.

**B. Pump Media's Usury Claim Must Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted (Count 1)**

The first issue is Pump Media's usury claim. Under Minnesota law, corporations are presumed to have an equal bargaining position with lenders and are therefore statutorily barred

---

[5] The Honorable Judge Cormac J. Carney of the United States District Court for the Central District of California, in dismissing Pump Media's nearly-identical claims in California, also found that the Lease Agreement contained a mandatory choice of law provision in favor of Minnesota that must be enforced. (Ehrich Aff. Ex. B, Calif. Civil No. 09-388 CJC/PJW.) Judge Carney further found that the provision at issue was not a product of fraud and that no compelling reason existed not to enforce the provision. *Id.*

from asserting usury claims. *Trapp v. Hancuh*, 530 N.W.2d 879, 884 (Minn. Ct. App. 1995); Minn. Stat. § 332.022 ( "…no limitation on the rate or amount of interest, points, finance charges, fees, or other charges applies to an extension of credit to an organization, and any such extension of credit is exempt from the other provisions of this chapter. 'Organization' means a corporation, government, government subdivision or agency, trust, estate, partnership, joint venture, cooperative, limited liability company, or association.") As the Court has already determined that Minnesota law applies to this dispute, the usury claim must fail because Pump Media is a corporation and therefore an "organization" under the statute.[6] (Compl. at Parties; Minn. Stat. § 332.022.)

**C. Pump Media's Claims Relating To Fraud, Deceit, and/or Misrepresentation and Unfair Business Practices Must Be Dismissed for Failure to State a Claim Upon Which Relief May Be Granted (Counts 2, 3, 4, 5, 6)**

In order to survive the motion to dismiss, Pump Media's claims must be facially plausible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The facts alleged must allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Here, where the plain language of the Lease Agreement is a necessary bar to Counts 2, 3, 4, 5, and 6 of the Complaint, the facts alleged do not permit the Court to reasonably infer liability. (Compl. Ex. B.) The common basis for these five claims is that Farnam Street falsely represented itself as providing Pump Media with a loan of money when Farnam Street was secretly intending to provide a lease of equipment. (Compl. ¶ 21.) However, even if Farnam did misrepresent the transaction in some way prior to the execution of the Lease Agreement, the

---

[6] The Court would also like to note that Pump Media's complaint itself impliedly recognizes the unavailability of a usury defense under Minnesota law, as Count 1 makes no mention of Minnesota law and refers solely to California law.

Lease Agreement clearly and plainly states that the agreement was a lease financing agreement, not a loan agreement. (Compl. Ex. B.) It is difficult to fathom that Pump Media would have believed that the agreement was something other than a lease agreement when 1) the agreement is labeled "Lease Agreement," 2) the parties are constantly referred to as "Lessee" and "Lessor," 3) Pump Media representatives Bajaria and Tawil repeatedly signed documents as the "Lessee," 4) the phrase "Lease Agreement" is used countless times throughout the document, 5) the attached schedules are called "Lease Schedules," 6) the charges are called "Lease Charges," and 7) the agreement clearly provides for Farnam Street to be the sole owner of the equipment. (*See generally*, Compl. Ex. B.) This language could hardly be more unambiguous, and the record contains no indication that Pump Media did not read the contract before signing it. Additionally, the Lease Agreement contains a merger clause that precludes the court from reaching outside the four corners of the document to examine extrinsic evidence, so (in the absence of ambiguity) the Court may not consider any oral representations made by any party during negotiations. (Compl. Ex. B at ¶ 25); *see also Material Movers, Inc. v. Hill*, 316 N.W. 2d 13, 17 (Minn. 1982) (parol evidence rule makes inadmissible evidence concerning discussions prior to or contemporaneous with execution of written instrument when that evidence contradicts the very terms of written agreement).

The only language within the Lease Agreement that Pump Media points to as evidence that the agreement is really a loan, not a lease, is the language within Lease Schedule 001 and Lease Schedule 002 stating that "All of the Equipment on this Lease Schedule shall be defined as a total of $300,000." (Compl. Exs. B, C.) Pump Media fails to acknowledge that written above this language on both Lease Schedules 001 and 002 is the directive, "See Attachment A." *Id.*

11

Both schedules include an Attachment A consisting mainly of a list generally describing the equipment to be leased. *Id.* Moreover, Schedule 001 and Schedule 002 also expressly provide for replacement schedules, which were duly executed (Schedule 001R and Schedule 002R) and which include a detailed list of the equipment that was actually purchased by Farnam Street for lease to Pump Media. (Compl. Exs. D, F.) The Court therefore finds that the $300,000 figure in Lease Schedules 001 and 002 (likely an estimate of the value of the equipment to be leased) does not transform what is obviously a lease agreement into a loan agreement.

For the reasons stated above, the Court finds it is not reasonable to infer that Farnam Street fraudulently misrepresented the agreement and further finds that the agreement was a lease agreement, not a loan agreement. Thus, Counts 2, 3, 4, 5 and 6, each of which depend upon a finding of fraud or misrepresentation, fail to state a claim upon which relief may be granted and must be dismissed.

### IV.  RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's and Third-Party Defendants' Motion to Dismiss [#51] be **GRANTED**.

DATED: November 23, 2009              s/ *Franklin L. Noel*
                                                    FRANKLIN L. NOEL
                                                    United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before December 7, 2009, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's

brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **December 7, 2009, a** complete transcript of the hearing.